ROBERT MEADOWS, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

421 S.W.2d 639.

(*Nashville,* December Term, 1966.)

Opinion filed November 27, 1967.

Edward C. White, Nashville, for plaintiff in error.

George F. McCanless, Attorney General, and Thomas E. Fox, Assistant Attorney General, Nashville, for defendant in error.

Mr. Justice Humphreys delivered the opinion of the Court.

Meadows was convicted of obtaining a diamond cluster ring valued at $192.06 from Gold-Silver & Company by means of a bad check, contrary to T.C.A. sec. 39-1904, and sentenced to not more nor less than three years in the state penitentiary. He has appealed raising several questions, the only meritorious one being that the evidence preponderates against his conviction, in that an indispensable element of the crime is not made out sufficiently by the proof.

T.C.A. sec. 39-1904 provides in relevant part:

"39-1904. Obtaining money, property or credit by unpaid check, draft or order.—Any person who shall obtain, with fraudulent intent, money or other property which may be the subject of larceny, or who shall obtain credit with like intent, by means of a check, draft, or order, of which he is the maker or drawer, which is not paid by the drawee, shall, upon conviction, be punishable as in the case of larceny of such money or other property, or of anything of value obtained on such credit, unless payment shall be made of such check, draft or order within five (5) days after written notice is mailed to the drawer's last known address, in event the situs of the drawee is in the state of Ten-

nessee; and in the event of situs of the drawee is not in this state, then the above notice is dispensed with; also, if the drawer or maker is not a resident of Tennessee or has left the jurisdiction of this state at the time the said instruments are dishonored, the above notice is dispensed with; and the fact that such maker or drawer did not have on deposit or to his credit with the bank or person upon which such check, draft or order is drawn, sufficient funds to pay the same when presented, unless such check or draft is paid or accepted when presented, shall be prima facie evidence of fraudulent intent. If the drawer or maker does not have an account with the bank or person upon which such check, draft or order is drawn, the notice required in this section in dispensed with.''

In order to convict defendant under this statute the State had to prove beyond a reasonable doubt that he obtained property by means of a check, of which he was the maker or drawer, which was not paid by the drawee, nor paid within five days after written notice. Or, in the absence of written notice, that defendant did not have an account with the bank upon which the check was drawn.

It is undisputed that defendant, by means of a check drawn on the First American National Bank, on December 24, 1966, obtained from Gold-Silver & Company, a diamond cluster ring valued at $192.06. Moreover, it was proved by Gold-Silver and conceded by defendant that the check was not paid when presented to the First American National Bank for payment; nor was it paid by defendant. It is also conceded that no written notice was mailed to defendant's last known address, and that the situs of the drawee was in the State of Tennessee; being, in fact, in Nashville, Tennessee.

The only question was whether the defendant had an account with First American National Bank within the meaning of the statute so as to require written notice.

On this issue the evidence is unsatisfactory, and we think the case must be remanded for a new trial on this account.

There was no competent evidence introduced by the State on this issue. The only witness introduced by the State was W. L. Lynn, sales manager for Gold-Silver & Company. And, while at one point in his testimony he made the statement that he had proof defendant had no account at the bank, no such proof was introduced by him or anyone else.

The only thing in the record bearing on this issue is a slip attached to the check as follows:

"Returned by
First American National Bank
Nashville, Tenn. 37202
for reason indicated below

Endorsement. . . . .
Do not appear to have
such an account . . . .
Account closed . . . .
See Bank-Date . . . .
Signature does not
agree with signature on file . . .
Signature illegible . . . .
Other:
_____"

The reason indicated on the check for returning it was, "Do not appear to have such an account".

Written across the face of this slip by pen, as best we can make out are the words, "asleep returning call" No proof was offered to explain the meaning of these words, whether they related to the account or to some person, or whatever. Nor, as indicated from what we have said, was any person called as a witness from the bank to give evidence in the case.

Meadow's testimony on direct was that on December 24, he gave the check as charged but that at that time he had a joint account in the First American National Bank with his wife. On cross-examination, though misapprehension as to what the defendant had testified, the trial judge said to him during cross-examination, "I thought you told the court and jury you didn't have an account there on the 24th day of December." As a matter of fact the defendant had not so testified. To the contrary, he had stated, as we have above indicated, that he did have an account at that bank on December 24th, when he gave the check. However, upon being pressed by the court he testified that he had called the bank and that they had told him the account had been closed, "approximately the 23rd or 24th, maybe of December." As to the account defendant testified further:

Q. Do you relate to The Court and jury that you wrote that check and you didn't know whether or not your account was still active?

A. As far as I knew at that time the account was active.

Q. Would you relate what was the basis of your belief that that account was still active?

A. Well, I had four to six hundred dollars Christmas Savings I had with the company and I had given that

to my wife to deposit. It was the company I had went to work for, and she started dating another fellow and we just split up and I kept my child with me, and I didn't know anything about it.

Q. And that's the reason you give that you thought you still had that bank account?

A. That's right."

B. of E. pp. 33-34.

■ We think it must be conceded that even when this record is considered in the light of the presumption in favor of the judgment of conviction it is not enough. Since the only evidence in the case as to whether defendant had an account at the bank on which the check was drawn is his own evidence, and from this evidence defendant had an account at the bank on which the check was drawn, and it is not certain whether his wife drew out the funds before or after he drew the check on the bank, the State failed to prove facts necessary to waive the five-day written notice.

■■ The slip attached to the check is, of course, no evidence of the state of defendant's "account" with First American National Bank; using the word "account" as it is evident the legislature used it. For this term was intended to apply to a situation where by reason of deposits and withdrawals the drawee bank regarded the drawer as continuing to do business with it, and evidenced this intention by maintaining current records of account between itself and the depositor. To have an "account" with a bank, it is not indispensable that the depositor have funds on deposit at the exact time of the drawing of a check. The sole purpose of this particular provision is to dispense with the five-

day written notice required by the statute when a check is not paid by the drawee. To hold that bare nonpayment of a check by the bank amounts to proof of no account, would leave the five-day written notice provision of the statute without any meaning whatsoever.

 We hold that in order to establish that the drawer or maker does not have an account with the bank or person upon which the check is drawn, there must be competent proof with respect to the state of affairs between the drawee and the maker or drawer at the time the check is drawn so that the question of "account" can be decided by the jury along with all other issues. And that an ambiguous, unverified, unauthenticated, hearsay slip, such as was attached to the check in this case, is no such evidence.

The judgment of the lower court is set aside and the case is remanded for a new trial.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN, and CRESON, JUSTICES, concur.